1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                    **EASTERN DISTRICT OF CALIFORNIA**

8

9

10   **AMILCAR QUINTEROS,**              )        **CIV-F-09-2200 AWI GSA**
                                         )
11            **Plaintiff**,             )
                                         )        **ORDER RE: MOTION TO DISMISS**
12        **v.**                         )
                                         )
13   **AURORA LOAN SERVICES, and DOES**  )
     **1 through 50, inclusive,**        )
14                                       )        (Docs. 5, 6, and 7)
              **Defendants**.            )
15   _____    )

16

17                              **I. History**[1]

18          Plaintiff Amilcar Quinteros resides at 1405 S. Temperance Ave., Fresno, CA 93727.

19   Plaintiff purchased that property with a $382,000 mortgage provided by New Century Mortgage

20   Corporation on March 25, 2005.  Plaintiff alleges New Century transferred, sold, or assigned the

21   loan to Defendant Aurora Loan Services.  Plaintiff fell behind on his mortgage payments in 2008.

22   Plaintiff contacted Defendant and orally agreed to make payments of $1,900 per month.  Plaintiff

23   made those payments between January and April 2009, four payments in all.  In May 2009,

24   Plaintiff was orally informed that the property was being foreclosed on.  The foreclosure may

25   have been completed on June 4, 2009.

26   _____

27          [1]The factual history is provided for background only and does not form the basis of the
     court's decision; the assertions contained therein are not necessarily taken as adjudged to be true.
28   The legally relevant facts relied upon by the court are discussed within the analysis.

1    Plaintiff filed suit on November 6, 2009 in the Superior Court, County of Fresno.

2  Plaintiff asserts eleven causes of action: (1) declaratory relief, (2) cancellation of instruments, (3)

3  to set aside foreclosure proceedings, (4) injunction, (5) accounting, (6) breach of oral contract,(7)

4  promissory estoppel, (8) intentional infliction of emotion distress, (9) negligent infliction of

5  emotional distress, (10) violation of RESPA, and (11) violation of Cal. Civ. Code §2923.6. Doc.

6  10.  The case was removed to the Eastern District based on federal question jurisdiction.

7  Defendant has made motions to dismiss for failure to state a claim and to strike.  Plaintiff has

8  filed an opposition, and Defendant filed a reply.  The matter was taken under submission.

9    Plaintiff filed for Chapter 13 bankruptcy protection in the U.S. Bankruptcy Court, Eastern

10  District of California on July 8, 2010.  The automatic stay pursuant to 11 U.S.C. §362 is in effect.

11  "The automatic stay is applicable only to proceedings against the debtor." Snavely v. Miller, 397

12  F.3d 726, 729 (9th Cir. 2005), citing Ingersoll-Rand Financial Corp. v. Miller Mining Co., 817

13  F.2d 1424, 1426 (9th Cir. 1987) (staying appeal where the debtor-appellant is the defendant in

14  the underlying case despite noting that "Because this appeal is brought by the debtor, it could be

15  argued that the language of section 362 does not apply"); see also Rett White Motor Sales Co. v.

16  Wells Fargo Bank, 99 B.R. 12, 15 (N.D. Cal. 1989); Serrato v. Ashley, 1993 U.S. Dist. LEXIS

17  4556, *3 (N.D. Cal. Feb. 1, 1993).  Plaintiff's claims in this case are unaffected by the stay.

18

19                **II. Legal Standards**

20    Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the

21  plaintiff's "failure to state a claim upon which relief can be granted."  A dismissal under Rule

22  12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient

23  facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir.

24  2001).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

25  factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

26  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

27  of action will not do. Factual allegations must be enough to raise a right to relief above the

28  speculative level, on the assumption that all the allegations in the complaint are true (even if

1   doubtful in fact)....a well-pleaded complaint may proceed even if it strikes a savvy judge that

2   actual proof of those facts is improbable" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56

3   (2007), citations omitted.  "[O]nly a complaint that states a plausible claim for relief survives a

4   motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the

5   Court of Appeals observed, be a context-specific task that requires the reviewing court to draw

6   on its judicial experience and common sense. But where the well-pleaded facts do not permit the

7   court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it

8   has not shown that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950

9   (2009), citations omitted.  The court is not required "to accept as true allegations that are merely

10  conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden

11  State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  The court must also assume that "general

12  allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l

13  Wildlife Fed'n, 497 U.S. 871, 889 (1990), citing Conley v. Gibson, 355 U.S. 41, 47 (1957),

14  overruled on other grounds at 127 S. Ct. 1955, 1969.  Thus, the determinative question is

15  whether there is any set of "facts that could be proved consistent with the allegations of the

16  complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S.

17  506, 514 (2002).  At the other bound, courts will not assume that plaintiffs "can prove facts

18  which [they have] not alleged, or that the defendants have violated...laws in ways that have not

19  been alleged." Associated General Contractors of California, Inc. v. California State Council of

20  Carpenters, 459 U.S. 519, 526 (1983).

21      In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited

22  to reviewing only the complaint.  "There are, however, two exceptions....First, a court may

23  consider material which is properly submitted as part of the complaint on a motion to dismiss...If

24  the documents are not physically attached to the complaint, they may be considered if the

25  documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them.

26  Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record."

27  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted.  The Ninth

28  Circuit later gave a separate definition of "the 'incorporation by reference' doctrine, which

1  permits us to take into account documents whose contents are alleged in a complaint and whose

2  authenticity no party questions, but which are not physically attached to the plaintiff's pleading."

3  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted.  "[A] court may not

4  look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition

5  to a defendant's motion to dismiss. Facts raised for the first time in opposition papers should be

6  considered by the court in determining whether to grant leave to amend or to dismiss the

7  complaint with or without prejudice." Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003),

8  citations omitted.

9       If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without

10 prejudice, and with or without leave to amend.  "[A] district court should grant leave to amend

11 even if no request to amend the pleading was made, unless it determines that the pleading could

12 not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th

13 Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  In other

14 words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX,

15 Inc., 298 F.3d 893, 898 (9th Cir. 2002).

16

17                                            **III. Discussion**

18 **A. Declaratory Relief, Cancellation of Instruments, and Setting Aside Foreclosure**

19 **Proceeding and Trustee's Deed Upon Sale**

20       These causes of action all generally allege that the foreclosure was invalid and must be

21 reversed.  Plaintiff alleges "DEFENDANTS violated Civil Code section 2924 et seq., thereby

22 rendering the foreclosure proceeding and the Notice of Default, Assignment of Deed of Trust,

23 Substitution of Trustee, Notice of Trustee Sale and Trustee's Deed Upon Sale (collectively the

24 'Foreclosure Documents') void." Doc. 10, Complaint, at 4:17-20.  In key part, Plaintiff alleges,

25 "Plaintiff was never notified by DEFENDANTS that the property was being foreclosed upon."

26 Doc. 10, Complaint, at 3:11-12.  California's statutory system of nonjudicial foreclosure has been

27 summarized in the following oft cited passage:

28       Upon default by the trustor, the beneficiary may declare a default and proceed with a

1    nonjudicial foreclosure sale. The foreclosure process is commenced by the recording of a
     notice of default and election to sell by the trustee. After the notice of default is recorded,
2    the trustee must wait three calendar months before proceeding with the sale. After the
     3-month period has elapsed, a notice of sale must be published, posted and mailed 20
3    days before the sale and recorded 14 days before the sale. The trustee may postpone the
     sale at any time before the sale is completed. If the sale is postponed, the requisite notices
4    must be given. The conduct of the sale, including any postponements, is governed by
     Civil Code section 2924g.

5
     During the foreclosure process, the debtor/trustor is given several opportunities to cure
6    the default and avoid the loss of the property. First, the trustor is entitled to a period of
     reinstatement to make the back payments and reinstate the terms of the loan. This period
7    of reinstatement continues until five business days prior to the date of the sale, including
     any postponement.  In addition to the right of reinstatement, the trustor also possesses an
8    equity of redemption, which permits the trustor to pay all sums due prior to the sale of the
     property at foreclosure and thus avoid the sale. Additionally, at the time of the foreclosure
9    sale in this case, the trustor had the right to postpone the trustee's sale for one day in order
     to pay off the loan.

10
     As a general rule, the purchaser at a nonjudicial foreclosure sale receives title under a
11   trustee's deed free and clear of any right, title or interest of the trustor. A properly
     conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the
12   borrower and lender. Once the trustee's sale is completed, the trustor has no further rights
     of redemption.

13
     The purchaser at a foreclosure sale takes title by a trustee's deed. If the trustee's deed
14   recites that all statutory notice requirements and procedures required by law for the
     conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the
15   sale has been conducted regularly and properly; this presumption is conclusive as to a
     bona fide purchaser.

16

17   Moeller v. Lien, 25 Cal. App. 4th 822, 830-31 (Cal. App. 2d Dist. 1994), citations omitted.  A

18   cause of action to set aside a foreclosure action for failure to follow the correct procedure rises in

19   equity. See Knapp v. Doherty, 123 Cal. App. 4th 76, 87 (Cal. App. 6th Dist. 2004).

20          Defendant argues that "Plaintiff fails to rebut the presumption that the foreclosure sale

21   and trustee's deed are valid." Doc. 6, Brief, at 5:13-14.  Rebutting a presumption is a matter of

22   evidence.  At the pleading stage, Plaintiff merely has to allege facts that would be sufficient to

23   state a claim, not present evidence sufficient to overcome a presumption.

24          Failure to follow the procedures set out for non-judicial foreclosure under Cal. Civ. Code

25   §2924 et seq can be a cognizable claim in some circumstances.  Plaintiff has not alleged enough

26   information to determine if those circumstances apply.  Plaintiff only alleges that he did not

27   receive certain notices.  "The trustor need not receive actual notice of the trustee's sale so long as

28   notice is provided to the trustor that is in compliance with the statute. As one court has held: 'We

1  pointedly emphasize, however, that Civil Code sections 2924–2924h, inclusive, do not require

2  actual receipt by a trustor of a notice of default or notice of sale. They simply mandate certain

3  procedural requirements reasonably calculated to inform those who may be affected by a

4  foreclosure sale and who have requested notice in the statutory manner that a default has

5  occurred and a foreclosure sale is imminent.'" Knapp v. Doherty, 123 Cal. App. 4th 76, 88-89

6  (Cal. App. 6th Dist. 2004), citing Lupertino v. Carbahal, 35 Cal. App. 3d 742, 746-47 (Cal. App.

7  3d Dist. 1973).  Further, some form of actual prejudice is necessary: "When attacking a

8  non-judicial foreclosure sale, a borrower must overcome a presumption of propriety. She may do

9  this by proving an improper procedure occurred and by demonstrating resulting prejudice. Even

10  assuming the failure to certify or register the notice was improper, Davenport has neither shown

11  resulting prejudice nor even alleged it exists." Davenport v. Litton Loan Servicing, LP, 2010 U.S.

12  Dist. LEXIS 71561, *24 (N.D. Cal. July 16, 2010); see also Knapp v. Doherty, 123 Cal. App. 4th

13  76, 94 (Cal. App. 6th Dist. 2004) ("There was no prejudicial procedural irregularity" in giving

14  early notice).  Plaintiff must allege facts sufficient to satisfy all elements of a claim to set aside a

15  foreclosure.

16      Defendant also argues that "plaintiff is procedurally barred from bringing this action

17  because he has failed to tender the amount due on his mortgage loan before bringing this lawsuit,

18  in contravention of California's tender rule." Doc. 6, Brief, at 3:3-5.  "It is settled that an action

19  to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by

20  an offer to pay the full amount of the debt for which the property was security. This rule is

21  premised upon the equitable maxim that a court of equity will not order that a useless act be

22  performed." Arnolds Management Corp. v. Eischen, 158 Cal. App. 3d 575, 578-79 (Cal. App. 2d

23  Dist. 1984); see also Patacsil v. Wilshire Credit Corp., 2010 U.S. Dist. LEXIS 10414, *19 (E.D.

24  Cal. Feb. 5, 2010); Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1184 (N.D.

25  Cal. 2009); Spurlock v. Carrington Mortg. Servs., 2010 U.S. Dist. LEXIS 80221, *8 (S.D. Cal.

26  Aug. 4, 2010).  Plaintiff has plead that he "hereby tenders all of the delinquencies and costs due

27  for reinstatement of the Note and Deed of Trust." Doc. 10, Complaint, at 5:10-11.  That appears

28  to be an offer to pay arrearages on the mortgage rather than the full balance of the mortgage.

6

1    Plaintiff argues that tender is not necessary as "PLAINTIFF does not seek equity,

2  PLAINTIFF seeks strict enforcement of California's statutory scheme regarding non-judicial

3  foreclosures and to compel Defendants to allow PLAINTIFF to exercise his rights under the

4  statutory scheme and the Agreement." Doc. 19, Opposition, at 6:1-3.  As previously stated, suits

5  to set aside foreclosures for failure to follow the correct procedure rises in equity; Plaintiff fails

6  to identify any specific statutory language that gives him a private cause of action for wrongful

7  foreclosure.  Plaintiff cites to one case for the proposition that the requirement of tender may be

8  waived. See Storm v. America's Servicing Co., 2009 U.S. Dist. LEXIS 103647 (S.D. Cal. Nov.

9  6, 2009).  However, that case is distinguished as the case dealt with a sale of property that was

10  arguably not mortgaged: "The cases that Defendant cites in its motion to dismiss generally stand

11  for the proposition that tender of the indebtedness is required in an action to set aside a trustee's

12  sale for irregularities in sale notice or procedure. The Court is unaware of any case holding there

13  is a bright-line rule requiring tender of the unpaid debt to set aside a sale in other circumstances,

14  such as where a trustee allegedly sells property that is not encumbered." Storm v. America's

15  Servicing Co., 2009 U.S. Dist. LEXIS 103647, *23-24 n.9 (S.D. Cal. Nov. 6, 2009), citations

16  omitted.

17    In briefing, Plaintiff states, "PLAINTIFF has alleged that he did not receive the required

18  notices and that DEFENDANT lacked authority to execute and record the same, in any event,

19  thus, rendering the foreclosure proceeding and resulting trustee's deed upon sale void." Doc. 19.

20  Opposition, at 12:2-5.  The allegations that Defendant lacked authority to execute and record the

21  notice are not part of the complaint.  Plaintiffs' claims for declaratory relief, cancellation of

22  instruments, and to set aside foreclosure proceedings and trustee's deed upon sale are dismissed

23  with leave to amend.

24

25  **B. Accounting**

26    Plaintiff alleges he "has requested an accounting, and herein again requests, that the

27  DEFENDANTS provide an accounting of all payments, fees, interest, debits and credits

28  regarding the Note, which the DEFENDANTS have failed to provide." Doc. 10, Complaint, at

**7**

1  6:8-10.  "'Accounting' usually means the striking of a balance between debits and credits,

2  showing a balance due, if any. An action for an accounting, which usually invokes the equity

3  powers of the court, is a proceeding for the purpose of obtaining a judicial settlement of the

4  accounts of the parties. An accounting may also be an auxiliary remedy in actions other than

5  those brought for an accounting as such." 1 Cal. Jur. Accounts and Accounting § 74.

6          Defendant argues that the claim fails as there is no fiduciary relationship between

7  Plaintiff and Defendant. Doc. 6, Brief, at 6:14-19; Doc. 23, Reply, at 12:8-12.  Under California

8  law, a claim for accounting does not require a fiduciary relationship. Teselle v. McLoughlin, 173

9  Cal. App. 4th 156, 179 (Cal. App. 3d Dist. 2009) ("a fiduciary relationship between the parties is

10  not required to state a cause of action for accounting. All that is required is that some relationship

11  exists that requires an accounting").  "An action for an accounting is equitable in nature. It may

12  be brought to compel the defendant to account to the plaintiff for money or property, (1) where a

13  fiduciary relationship exists between the parties, or (2) where, even though no fiduciary

14  relationship exists, the accounts are so complicated that an ordinary legal action demanding a

15  fixed sum is impracticable." 5 Witkin Cal. Proc. Plead. §819.  The amounts at issue are monies

16  Plaintiff owes to Defendant under the mortgage and not amounts Defendant may owe Plaintiff.

17  "Plaintiffs, as the party owing money, not the party owed money, has no right to seek an

18  accounting." Hernandez v. First Am. Loanstar Trustee Servs., 2010 U.S. Dist. LEXIS 35824, *12

19  (S.D. Cal. Apr. 12, 2010); Nguyen v. LaSalle Bank Nat'l Ass'n, 2009 U.S. Dist. LEXIS 99412,

20  *28-29 (C.D. Cal. Oct. 13, 2009).  Plaintiff's accounting claim is dismissed with leave to amend.

21

22  **C. Oral Contract and Promissory Estoppel**

23          Plaintiff alleges "On or about January 2009, PLAINTIFF and DEFENDANTS entered

24  into an oral agreement whereby DEFENDANT agreed to modify PLAINTIFF's mortgage

25  agreement, whereby DEFENDANT agreed not to foreclose upon the Residence, if PLAINTIFF

26  would make payments in the amount of approximately $1,900.00 per month....On or about May

27  2009, DEFENDANT breached the oral agreement by foreclosing upon the Residence, despite the

28  fact that PLAINTIFF had made payments as instructed for the previous four months, which were

8

1 accepted and cashed by DEFENDANTS." Doc. 10, Complaint, at 6:18-26.  In briefing, Plaintiff

2 alleges he "signed and delivered the written forbearance and modification offer prepared and

3 delivered by Defendant Aurora, but, Defendant Aurora did not send a fully executed copy back to

4 Plaintiff." Doc. 19, Opposition, at 15:27-28.  Defendant argues that the oral agreement violates

5 the statute of frauds. Doc. 6, Brief, at 6:24-25.  "In certain situations the plaintiff, as part of a

6 cause of action, must plead facts to negative a statutory bar to the action appearing on the face of

7 the complaint. The chief illustrations are...statute of frauds." 4 Witkin Cal. Proc. Plead. §425.

8 "The following contracts are invalid, unless they, or some note or memorandum thereof, are in

9 writing and subscribed by the party to be charged or by the party's agent:...(6) An agreement by a

10 purchaser of real property to pay an indebtedness secured by a mortgage or deed of trust upon the

11 property purchased, unless assumption of the indebtedness by the purchaser is specifically

12 provided for in the conveyance of the property." Cal. Civ. Code §1624.  "A mortgage or deed of

13 trust also comes within the statute of frauds....The January 2002 Forbearance Agreement, though

14 not creating, renewing, or extending the note and deed of trust, did modify them. An agreement

15 to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds."

16 Secrest v. Security National Mortgage Loan Trust 2002-2, 167 Cal. App. 4th 544, 552-53 (Cal.

17 App. 4th Dist. 2008).

18     Plaintiff argues that no writing is required when there is either consideration or part

19 performance. Doc. 19, Opposition, at 15:16-22.  "[A] contract in writing may be modified by an

20 oral agreement supported by *new* consideration." Cal. Civ. Code §1698(c), emphasis added.

21 Plaintiff has not yet alleged that there was any new consideration to support the modification.

22     Plaintiff's argument of partial performance is tied to his claim for promissory estoppel:

23 "As a result of DEFENDANTS' failure to perform according to the assurance that they made to

24 PLAINTIFF; PLAINTIFF has been induced to part with approximately $7,600.00 and has

25 incurred attorneys' fees in defense of the void foreclosure upon the property, and the continued

26 defense of this action in a sum to be shown at trial." Doc. 10, Complaint, at 7:19-22.  "The

27 elements of promissory estoppel are: (1) a clear promise, (2) reliance, (3) substantial detriment,

28 and (4) damages measured by the extent of the obligation assumed and not performed." Poway

1    Royal Mobilehome Owners Assn. v. City of Poway, 149 Cal. App. 4th 1460, 1471 (Cal. App. 4th

2    Dist. 2007), citations omitted.  "[T]he doctrine of promissory estoppel is used to provide a

3    substitute for the consideration which ordinarily is required to create an enforceable promise."

4    Raedeke v. Gibraltar Sav. & Loan Assn., 10 Cal. 3d 665, 672-673 (Cal. 1974).

5         Two relevant cases discuss promissory estoppel in the mortgage modification context.  In

6    one case, the lender verbally told the borrower that "she could skip three payments and that they

7    would be added to the end of the loan period....Sutherland relied to her detriment on Barclays's

8    statement that she could postpone three mortgage payments. Having orally agreed to such a

9    postponement, Barclays cannot rely on the absence of a written agreement in order to declare

10   Sutherland in default for missing those payments." Sutherland v. Barclays American/Mortgage

11   Corp., 53 Cal. App. 4th 299, 311-12 (Cal. App. 2d Dist. 1997).  In the other case, the lender

12   verbally agreed not to proceed with foreclosure if the borrower paid a downpayment on the

13   amount overdue; "In addition to having partially performed, the party seeking to enforce the

14   contract must have changed position in reliance on the oral contract to such an extent that

15   application of the statute of frauds would result in an unjust or unconscionable loss, amounting in

16   effect to a fraud....The Secrests argue their payment of $ 13,422.51 to Ocwen constituted part

17   performance and a change of position sufficient to prevent Respondents from asserting the statute

18   of frauds. Before a party can be estopped to assert the statute of frauds due to the other's part

19   performance, it must appear that a sufficient change of position has occurred so that the

20   application of the statutory bar would result in an unjust and unconscionable loss, amounting in

21   effect to a fraud. The payment of money is not sufficient part performance to take an oral

22   agreement out of the statute of frauds, for the party paying money under an invalid contract has

23   an adequate remedy at law. The Secrests do not assert they changed their position in reliance on

24   the January 2002 Forbearance Agreement in any way other than by making the downpayment."

25   Secrest v. Security National Mortgage Loan Trust 2002-2, 167 Cal. App. 4th 544, 555 (Cal. App.

26   4th Dist. 2008), citations omitted.  The situation at hand is identical to that of Secrest.  Plaintiff

27   has alleged in the complaint that he made $7,600 in mortgage payments in reliance on the

28   modification; it should be noted that Plaintiff was obligated to make those $7,600 in payments

1  under the original terms of the mortgage anyway.  In <u>Sutherland</u>, the borrower would have made

2  payments but for the lender's representations; she relied on the representation to actively change

3  her actions.  Plaintiff's breach of oral contract and promissory estoppel claims are dismissed with

4  leave to amend.

5

6  **D. Intentional Infliction of Emotional Distress**

7        Plaintiff alleges "the acts and omissions of DEFENDANTS, as alleged herein, were

8  willfully, voluntarily and recklessly calculated to inflict emotional distress on PLAINTIFF." Doc.

9  10, Complaint, at 8:1-2.  "The elements of the tort of intentional infliction of emotional distress

10  are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or

11  reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering

12  severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

13  distress by the defendant's outrageous conduct. Conduct to be outrageous must be so extreme as

14  to exceed all bounds of that usually tolerated in a civilized community." <u>Christensen v. Superior</u>

15  <u>Court</u>, 54 Cal. 3d 868, 903 (Cal. 1991), citations omitted.  Plaintiff asserts that "foreclosing upon

16  someone's home, without proper notice, is likely to result in severe emotional distress." Doc. 19,

17  Opposition, at 17:26-28.  The act of foreclosing on a home (absent other circumstances) is not

18  the kind of extreme conduct that supports an intentional infliction of emotional distress claim.

19  See <u>Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut., Inc.</u>, 2010

20  U.S. Dist. LEXIS 99161, *13 (N.D. Cal. Sept. 22, 2010); <u>Mehta v. Wells Fargo Bank, N.A.</u>,

21  2010 U.S. Dist. LEXIS 88336, *48 (S.D. Cal. Aug. 26, 2010) ("The fact that one of Defendant

22  Wells Fargo's  employees allegedly stated that the sale would not occur but the house was sold

23  anyway is not outrageous as that word is used in this context").  Plaintiff's intentional infliction

24  of emotional distress claim is dismissed with leave to amend.

25

26  **E. Negligent Infliction of Emotional Distress**

27        Plaintiff alleges "DEFENDANTS owed a duty to PLAINTIFF to avoid causing him

28  unreasonable and unjustified emotional distress." Doc. 10, Complaint, at 8:20-21.  "The

negligent causing of emotional distress is not an independent tort but the tort of negligence. The traditional elements of duty, breach of duty, causation, and damages apply." Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., 48 Cal. 3d 583, 588 (Cal. 1989), citations omitted. Lender-borrower relations do not normally give rise to a duty supporting a negligence cause of action. See, e.g Mehta v. Wells Fargo Bank, N.A., 2010 U.S. Dist. LEXIS 88336, *47 (S.D. Cal. Aug. 26, 2010) ("there is no suggestion that either Wells Fargo or First American owed Plaintiff a duty sufficient to support his negligent infliction of emotional distress claim. Certainly the parties had no special relationship where Plaintiff's emotional condition was an object"); Palestini v. Homecomings Fin., LLC, 2010 U.S. Dist. LEXIS 72985, *12 (S.D. Cal. July 20, 2010) ("Homecomings did not owe Plaintiffs any duty because their conduct did not exceed their conventional roles as a loan servicer"); Sierra-Bay Fed. Land Bank Assn. v. Superior Court, 227 Cal. App. 3d 318, 334 (Cal. App. 3d Dist. 1991) ("plaintiff's complaint simply alleges that he obtained loans from defendants and that he gave them deeds of trust on real property to secure his performance. He defaulted on the loans and the defendants exercised the powers of sale in the deeds of trust. These allegations do not even hint at a viable cause of action for negligence under the law of this state. A commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower"). Plaintiff's negligent infliction of emotional distress claim is dismissed with leave to amend.

**F. Real Estate Settlement Practices Act**

RESPA requires "Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person" and "Each transferee servicer to whom the servicing of an federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer." 12 U.S.C. §2605(b)(1) and (c)(1). Plaintiff alleges Defendant violated RESPA in that "PLAINTIFF was not notified by the transferee in writing of the assignment, sale or transfer of the assignment, sale or transfer of the loan." Doc. 10, Complaint, at 9:9-10. Defendant acknowledges that the loan servicing was transferred from Homecoming Financial to Defendant,

1  effective April 1, 2008.  Defendant states that the requirements of 12 U.S.C. §2605 were satisfied

2  as Plaintiff was sent a letter informing him of the change. Doc. 6, Brief, at 10, 24-26.  Defendant

3  seeks judicial notice of the that document as a writing that is referred to in the complaint which is

4  not subject to dispute per <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005). See Doc. 6,

5  Part 2, Ex. 2, March 18, 2008 Letter.  Plaintiff claims that the notice needed to be sent by

6  certified or registered mail, citing Cal. Civ. Code §2924 et seq. Doc. 19, Opposition, at 19:17-18.

7  RESPA requirements are not governed by California's nonjudicial foreclosure statutes.  Plaintiff

8  then opposes judicial notice of the March 18, 2008 letter, without clarifying if he did in fact

9  receive it. Doc. 19, Opposition, at 19:17-18.  Given Plaintiff's representations in the briefing, it is

10  not clear if Plaintiff has stated a claim.  Plaintiff's RESPA claim is dismissed with leave to

11  amend.

12

13  **G. Cal. Civ. Code 2923.6**

14       Plaintiff alleges "DEFENDANTS and each of them, have failed to offer PLAINTIFF a

15  loan modification or workout plan as required by Civil Code Section 2923.6." Doc. 10

16  Complaint, at 10:2-3.

> (a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a polling and servicing agreement, and that a servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:
> (1) The loan is in payment default, or payment default is reasonably foreseeable.
> (2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.
> (b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

25  Cal. Civ. Code §2923.6.  However, there is no private cause of action under Section 2923.6.

26  <u>Nool v. Homeq Servicing</u>, 2009 U.S. Dist. LEXIS 80640, *8 (E.D. Cal. Sept. 4, 2009); <u>Runaj v.

27  Wells Fargo Bank</u>, 667 F. Supp. 2d 1199, 1207 (S.D. Cal. 2009); <u>Pantoja v. Countrywide Home

28  Loans, Inc.</u>, 640 F. Supp. 2d 1177, 2009 U.S. Dist. LEXIS 70856, *22 (N.D. Cal. July 9, 2009).

13

1  Plaintiff argues that since Defendant did agree to a modification, Defendant is obligated to abide

2  by the terms of the modification under Section 2923.6. Doc. 19, Opposition, at 19:27-20:7.  That

3  is a claim that sounds in breach of contract and not Section 2923.6.  Plaintiff's violation of Cal.

4  Civ. Code §2923.6 claim is dismissed without leave to amend.

5

6                                         **IV. Order**

7        Plaintiff's Complaint is DISMISSED with leave to amend all claims excepting the Cal.

8  Civ. Code §2923.6 claim.  Plaintiff must file an amended complaint within twenty-eight (28)

9  days of the filing of this order.

10

11  IT IS SO ORDERED.

12

Dated:      September 29, 2010     _____

13                                          CHIEF UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28